UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>ELLIS LATRENT RAY, II,<br><br>      Defendant. | CASE NO. 2:20-cr-126 (3)<br><br>CHIEF JUDGE MARBLEY |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum for the sentencing of Defendant Ellis LaTrent Ray, II ("Defendant" or "Ray"). For the reasons set forth herein and considering all other relevant factors, the United States recommends that Defendant be sentenced to a term of imprisonment of 27 months, followed by three years of supervised release, and a $100 special assessment.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In or about November of 2019, Defendant conspired with Denia Idelca Avila ("Avila"), Antwuan Green, Jr. ("Green, Jr."), Jevon Smith ("Smith) and Antonio Green ("Antonio") in the kidnapping of Victim #1. A second kidnapping attempt was also perpetrated by Avila, Michael Keith Ousley ("Ousley"), and Jerry E. McCallister ("McCallister"). Jessica Elizabeth Wise ("Wise") also participated in the planning of the kidnappings, but not the actual attempts.

On November 22, 2019, Avila asked Ray to put Avila in contact with Wise. Ray is Wise's son, a close friend of Avila's son, and well known to Avila. Ray complied with Avila's request. Wise then met with Avila and accompanied her to view the victims' apartment where the attempts

would occur in the coming days, before returning to a place Avila was renting at the time. In two recorded conversations that took place that night, Wise discussed, and advised Avila regarding, Avila's plan to detain at least Victim #1. To achieve her goals related to the kidnapping, Avila needed help. Wise assisted by recruiting Ousley; and two days later, on November 24, 2019, Wise provided Avila with Ousley's contact information.

Unbeknownst to Wise, Avila recruited Ray to assist in the kidnapping. Ray was asked by Avila to provide names and phone numbers of others who may also want to participate. Defendant recruited Green, Jr. and Smith, both of whom participated in the first kidnapping attempt along with Ray. While Ray originally believed that Avila wanted his help with retrieving items from Victim #1's home, by at least November 24, 2019, he learned of the plan to kidnap Victim #1. It was on this day that he, Avila, and Green Jr., discussed the kidnapping plan and payment, including conducting a dry run by Victim #1's residence. Green Jr. subsequently recruited his brother, Antonio. Later that evening, Avila, Ray, and the others gathered and ultimately spent the night at a place rented by Avila. Avila explained to Ray, as well as to the others, the plan for the kidnapping. Ray and Smith were initially instructed to wait outside the residence and grab Victim #1 as he exited his home for work. Avila then altered the plan, instructing Ray and Antonio to move to a position behind the victims' residence in case Victim #1 attempted to escape in that direction. They were also to assist moving Victim #1 into the conspirators' vehicle once he was restrained. Avila assuaged any concerns by telling the coconspirators that Victim #1 was illegal and couldn't or wouldn't call the police, anyway.

Ray, Avila, and the other conspirators traveled from the rental location to a nearby store for food and supplies, and then to the victims' residence. Once there, Avila pointed out the specific position that Smith and Green, Jr. could hide and wait for Victim #1 to approach his vehicle. She

also indicated where Ray and Antonio should be located in case Green, Jr. and Smith needed help.

The kidnapping was planned for the early morning hours when Victim #1 left his residence for work. The plan was for Victim #1 to be tased in the neck, restrained, and taken to Avila's hotel room. If Victim #2 was present, the plan was to be aborted.

On or about November 25, 2019, Avila, Ray, and the others, went to the Victim #1's residence. Ray and Antonio were positioned in the back of the apartment in case Victim #1 attempted to flee in that direction. At Avila's direction, Smith and Green Jr. approached Victim #1's apartment as he entered his vehicle. A taser was deployed against Victim #1's neck. Victim #2 screamed, as she was unanticipatedly sitting in the passenger seat of the vehicle. This caused Green Jr. to stop the taser, which allowed Victim #1 to push Green Jr. away. Everyone ran to Avila's vehicle and fled the area. The end of Ray's involvement in the conspiracy occurred on November 25, 2019, after this first failed kidnapping attempt.

Ray was charged with one count of Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c), in an Indictment returned by a grand jury on July 30, 2020, and again by a Superseding Indictment returned on October 21, 2020. On August 13, 2021, Ray pleaded guilty to one count of Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 371, as charged by a Superseding Information, and pursuant to a Rule 11(c)(1)(A) plea agreement.

## II. U.S. SENTENCING GUIDELINES

### a. *Statutory Maximum Sentence*

The maximum sentence for Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 371 is a term of imprisonment up to five years, a fine not to exceed $250,000, up to three years of supervised release, restitution, and a mandatory special assessment of $100.00.

      b. *Sentencing Guidelines Calculation*

In imposing a sentence, the Court must consider the sentencing factors set forth in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established by the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.").

The PSR correctly determined that, pursuant to U.S.S.G. § 2X1.1(a), the base offense level for Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 371 is 32. PSR at ¶47. There is a 2-level enhancement under U.S.S.G. § 2A4.1(b)(3) regarding the use of a dangerous weapon, i.e., the taser. PSR at ¶¶48-49. Also, there is a 2-level enhancement applied pursuant to U.S.S.G. § 3A1.1(b)(1) because the crime targeted a victim particularly susceptible to the criminal conduct. PSR at ¶¶52-53.[1] A 3-level enhancement is applied pursuant to U.S.S.G § 3B1.1(b) because the Defendant recruited two individuals to participate in the first kidnapping attempt, thus was an organizer, manager, or supervisor in the plan. PSR at ¶¶54-55. The United States does not oppose a 2-level reduction in offense level pursuant to U.S.S.G. § 3E1.1 based upon Defendant's acceptance of responsibility, if he continues to comply the terms of that section, and Defendant may be entitled to an additional 1-level decrease pursuant to U.S.S.G. § 3E1.1(b) in recognition of his timely notification of his intention to plead guilty. Plea Agreement at 2; PSR at ¶¶ 6.

Defendant falls into criminal history category I. PSR at ¶65. With a total offense level of 36 and a criminal history category I, Defendant's guideline range as calculated in the PSR is above the statutory maximum of 60 months, and thus, 60 months is the controlling range pursuant to U.S.S.G. § 5G1.1(a).

---

[1] Although there are no objections to the PSR, the Court previously ruled in the sentencing of Wise that this enhancement was not applicable. If the Court finds similarly here, the total offense level would be reduced by two levels.

4

**III.    THE PROPER SENTENCE**

Once the Court has properly calculated the guideline range, the Court must next consider the Section 3553(a) factors, which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

      a. *The Nature and Circumstances of the Offense; Defendant's History and Characteristics.*

The nature of Defendant's offense is very serious. Defendant learned the true, criminal nature of the plan, rather than "moving something" or some other innocuous purpose, prior to the instant offense, and he proceeded with the plan regardless. Defendant knew Avila, and he knew Victim #1 as well. In fact, Ray bears Victim #1's tattoo artwork on his own skin. Yet, he did not protest or attempt to dissuade Avila from her plan to kidnap someone he also knew. Nor did he warn Victim #1, who was left unaware and unwary of Avila's plot to kidnap him and chain him to a bed.

Instead, after Defendant was recruited by Avila to participate in the kidnapping attempt, he recruited two additional co-conspirators to join – young people, just like him. During the first kidnapping attempt, Defendant was positioned at the back of the apartment complex in case Victim

5

#1 attempted to flee, while other coconspirators approached Victim #1's vehicle as he left his residence. Unexpectedly, Victim #2 was in the passenger seat of the vehicle, which startled the coconspirators, causing them to flee.

There is no question that Ray's history and characteristics portray an individual who was motivated out of loyalty to assist Avila and that engaging in this criminal conduct was an isolated incident thus far in his life. Nevertheless, this criminal mistake to join her efforts is a BIG one. Kidnapping is incredibly serious and dangerous – but for Victim #2's screams, what might have happened next as Victim #1 was being tased? A stupid plan and decision to join – and recruit others – no doubt, but not one without consequences that should include a term of imprisonment. The Government's recommended term, which is below the Guidelines, recognizes these mitigation factors, but balances this one factor against all others.

> b. *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide for Just Punishment, and Afford Deterrence of Criminal Conduct.*

Defendant's sentence must be proportional to the seriousness of his offense to provide just punishment, deter Defendant and, more importantly, others from engaging in this kind of offense in the future, and promote respect for the law. Defendant's involvement in the conspiracy, recruiting additional coconspirators, and assisting in the first attempt were key to the execution of Avila's plans. Thus, Defendant's sentence should be substantial in reflection of the fact that his participation in the conspiracy is a serious violation of law that resulted in harm to the victims. Such a sentence would also serve to deter Defendant and others from recidivating and serve to deter others who would participate in a criminal conspiracy in reliance upon blind loyalty or a false sense of insulation from responsibility for their criminal acts based upon their belief that their victims too vulnerable to seek the protections of the law.

## IV. CONCLUSION

Upon consideration of all relevant factors, the United States respectfully requests that the Court sentence Defendant to a term of imprisonment of 27 months, followed by three years of supervised release, and a $100 special assessment.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/Jessica W. Knight
JESSICA W. KNIGHT (0086615)
Assistant United States Attorney
CHRISTOPHER N. ST. PIERRE (0097673)
Special Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: Jessica.Knight@usdoj.gov
            Christopher.St.Pierre@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum was served electronically via the Court's CM/ECF system on this 17th day of December 2021 upon counsel for Defendant Ellis LaTrent Ray, II.

s/Jessica W. Knight
JESSICA W. KNIGHT (0086615)
Assistant United States Attorney